IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KENNETH HARKINS, JR.** | * |
| Plaintiff, | * |
| v. | *   Civil No. **PJM 12-1229** |
| **DIVERSIFIED COLLECTION SERVICES, INC.** | * |
| Defendant. | * |

## MEMORANDUM OPINION

Kenneth Harkins, *pro se*, has sued Diversified Collection Services, Inc. ("DCS"), for damages resulting from a "hard pull"[1] by DCS of his credit report; that is, from the limited information in the Complaint, Harkins seems to allege that DCS improperly pulled his credit report in order to collect on a debt that it did not possess the right to collect.  He says he requested verification of the alleged debt from DCS, but has yet to receive any documentation from DCS that it is in fact a holder in due course.  Thus, he concludes that DCS is attempting to conceal its misconduct after making false and deceptive representations in an illegal attempt to collect the money.  Harkins also alleges that, since it had no right to collect the debt, DCS lacked a permissible purpose for obtaining his credit report.  He claims that, in consequence, he has suffered a reduced credit score, credit denials, credit delays, inability to apply for credit, loss of use of funds, mental anguish, emotional distress, humiliation, and loss of reputation.  In addition to general damages, he requests attorney's fees and costs.

---

[1] A "hard pull" is a full credit inquiry conducted when someone applies for a loan or line of credit. *How to Avoid a 'Hard Pull' of Your Credit Report and Still Borrow Money,* U.S. News and World Report, Money,  July 6, 2012, http://money.usnews.com/money/blogs/my-money/2012/07/06/how-to-avoid-a-hard-pull-of-your-credit-report-and-still-borrow-money.  It has been said that each hard pull can result in the reduction of a credit score by up to five points.  Lynnley Browning, *Preventing Credit Score Dings,* N.Y. TIMES, Oct. 10, 2010, at RE11, *available at* http://www.nytimes.com/2010/10/10/realestate/10mort.html.

DCS has filed a Motion for Judgment on the Pleadings (Paper No. 10), and Harkins has requested leave to amend his Complaint (Paper No. 13). He has also filed a Motion to Extend Discovery (Paper No. 16), which DCS has countered with a Response to the Motion for Extension of Time to Complete Discovery (Paper No. 18). For the reasons that follow, DCS' Motion for Judgment (Paper No. 10) on the Pleadings is **DENIED WITHOUT PREJUDICE**. Harkins' request for leave to amend his Complaint (Paper No. 13) is **GRANTED**. He shall have thirty days to amend his Complaint in accordance with the discussion below. Harkins' Motion to Extend Discovery (Paper No. 16) is **MOOT**.

**I.**

On April 25, 2011, DCS initiated a "hard pull" of Harkins' credit report from Experian, a credit reporting agency. On November 21, 2011, Harkins received a letter from DCS seeking to collect an alleged debt. He responded by certified letter to DCS on December 19, 2011, requesting validation of the alleged debt. His letter stated that failure to provide validation would constitute waiver of all claims against him and would render DCS liable for any and all costs he may have incurred plus attorney's fees.

Harkins asserts that DCS did not have a permissible purpose for pulling his credit report and therefore violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b. He further alleges that since DCS lacked the right to collect the debt, it engaged in misconduct by attempting to collect on a debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, the Maryland Fair Debt Collection Practices Act ("MFDCPA"), MD. CODE ANN., COM. LAW § 14-202, and the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-301. DCS has moved for judgment on the pleadings as to these claims, while Harkins moves for leave to amend his Complaint to include more factual allegations.

**II.**

The Court analyzes a motion for judgment on the pleadings under the same standard as that applies to a Rule 12(b)(6) motion for failure to state a claim. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). To defend against a Rule 12(b)(6) motion, the plaintiff must set forth a factual basis for each element of his claims so that the court can make a reasonable inference of the defendant's potential culpability. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 691 (2009) (internal citations omitted). The Court assumes the truth of the well-pleaded factual allegations in the Complaint and draws all reasonable factual inferences in favor of the plaintiff. *Burbach Broad Co.,* 278 F.3d at 406. Legal conclusions and "formulaic recitation of the elements of a cause of action," however, do not enjoy the same assumption of truth. *Iqbal,* 556 U.S. at 678–79 (internal citations omitted). While the Court liberally construes any documents filed by a *pro se* plaintiff and holds the pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal citations omitted), the plaintiff must nonetheless make a "short and plain statement of the claim showing that the pleader is entitled to relief" and cannot rely on legal conclusions masked as factual allegations. *Iqbal,* 556 U.S. at 677–78 (internal citations omitted).

**III.**

The Court addresses first Harkins' contention that DCS attempted to collect a debt from him, knowing that it possessed no legal right to the debt.

Harkins highlights DCS' failure to produce validation of the debt as proof of its knowledge that it was not the holder in due course. Not having the right to collect on the debt, he says, DCS lacked a permissible purpose in pulling Harkins' credit report, and thus violated the FCRA. In addition, he continues, any misrepresentations and attempts by DCS to illegally

collect on the debt, such as its November 2011 letter to him, violated the FDCA, the MFDCPA, and the MCPA because DCS knew it had no legal right to the money. Significantly, these several contentions were not set forth in the Complaint, but appear only in Harkins' response to DCS' Motion.

DCS asserts that it is entitled to judgment on the pleadings because the factual allegations in the Complaint, as it stands, fail to state a claim upon which relief may be granted. Even taking the factual allegations as true, DCS argues, Harkins has failed to provide sufficient factual support for his allegation that DCS lacked a permissible purpose when it pulled his credit report. As for his other claims, DCS asserts that Harkins has failed to provide any facts demonstrating the falsity of its representations or the impropriety of its conduct in its attempts to collect on the debt. In the absence of any facts indicating that DCS inaccurately reported the amount of debt, or made inappropriate threats of legal action or misrepresentations of its relationship with Harkins, DCS contends that Harkins fails to state any claim for which he can receive relief.

**IV.**

The Court will deny DCS' Motion for Judgment on the Pleadings and grant Harkins' request for leave to amend his Complaint. A brief discussion of how Harkins might proceed hereafter follows.

A. <u>Fair Credit Reporting Act</u>

Taken as true, the factual allegations in the Complaint as it stands do not state an FCRA claim. They indicate only that DCS pulled a credit report on Harkins in furtherance of collecting a debt from him. A credit reporting agency, however, may provide a credit report to a third party for "a credit transaction involving the consumer on whom the information is to be furnished and involving…collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A) (2010). If

the consumer has not already initiated the credit transaction in question, the third party must obtain his authorization prior to pulling his credit report. § 1681b(c)(1). In any event, the third party must possess a permissible purpose for pulling the credit report and provide "a general or specific certification" of that purpose to the credit reporting agency. § 1681b(f). As long as the third party has reason to believe that it has a permissible purpose in obtaining the report, it has not violated the FCRA. *Korotki v. Attorney Services Corp., Inc.,* 931 F.Supp. 1269, 1276 (D. Md. 1996) (internal citations omitted). Ironclad proof of the consumer's indebtedness is not required for the third party to satisfy the permissible purpose requirement. *Id.* To obtain proper certification, credit reporting agencies need only require third party requesters to "identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." § 1681e(a). To prevail on the theory of willful violation of the FCRA, the plaintiff must "show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Ausherman v. Bank of America Corp.,* 352 F.3d 896, 900 (4th Cir. 2003) (internal citations omitted). To succeed on a claim for negligent violation of the FCRA, the plaintiff must first demonstrate that the defendant owed him a duty. *Id.* at 901. The current Complaint does not do either of these things.

Harkins must allege that DCS failed to meet one of the above statutory requirements in order to succeed on his FCRA claim. He must also set forth specific facts or evidence as to his financial status, before and after the pull, buttressed by reference to such documents as tax statements or financial records, in order to suggest the non-existence of a debt and thereby indicate that it had no reason to believe that it was the holder in due course of any debt. Alternatively, Harkins might provide factual statements to the effect that he never directly authorized DCS or any entity to obtain a credit report without his knowledge, or he might allege,

based on knowledge, information, and reasonable belief, that DCS failed to provide Experian with appropriate certification in support of its request for Harkins' credit information or that it pulled his credit report for a purpose other than to collect on a debt. In short, Harkins must allude to facts beyond merely declaring that DCS failed to validate the debt, more particularly facts suggesting its knowledge or intention to defraud Harkins. As for his negligence claim under the FCRA, Harkins must include facts demonstrating that DCS owed him a legal duty, such as the existence of a contract showing a legal relationship between him and DCS, how this duty was breached, and how, as a result, he was harmed.

B. Fair Debt Collection Act

Harkins also alleges that DCS violated the FDCA when it pulled his credit report.

Pursuant to the FDCA, a debt collector may not falsely represent "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A) (2010), make a "threat to take any action that cannot legally be taken or that is not intended to be taken," § 1692e(5), use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10) (2010), or use "unfair or unconscionable means to collect or attempt to collect any debt" in the amount not authorized by the original debt agreement or permitted by law. § 1692f(1).

To state a claim under any of the provisions of the FDCA, Harkins must set forth at least a modicum of factual support bearing on DCS' purported misconduct. For example, he might contest the "character, amount, or legal status" of the debt by comparing the amount of debt stated in the letter sent by DCS with Harkins' own financial documents. Similarly, the letter from DCS and any other communication received from the company might be cited to indicate that DCS threatened to take action that could not legally be pursued or used unfair means to

collect on a debt. As the Complaint currently stands, however, Harkins has failed to provide any facts indicating actionable misconduct on DCS' part.

C. Maryland Fair Debt Collection Practices Act

Harkins also claims that DCS violated the MFDCPA, which provides that a debt collector cannot "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." MD. CODE ANN., COM. LAW § 14-202(8) (2012). As to this count, Harkins must set forth factual allegations tending to establish two elements: (1) that DCS did not possess the right to collect the amount of debt sought; and (2) that DCS attempted to collect the debt knowing that it lacked the right to do so. The key to prevailing on a claim of MFDCPA is to demonstrate that the defendant "acted with knowledge as to the *invalidity* of the debt." *Stewart v. Bierman,* 859 F. Supp. 2d 754, 769 (D.Md. 2012) (internal citations omitted) (dismissed plaintiff's MFDCPA claim for failure to demonstrate defendant's knowledge). The November 2011 collection letter from DCS does not ipso facto indicate such knowledge on the part of DCS. The letter, for example, might well have been the result of a one-time computer mistake. Insofar as Harkins is fairly able to attest that DCS continuously attempted to collect on the debt after being alerted to its incorrectness, this would arguably support an allegation of knowledge. The current Complaint, however, contains no facts that dispute DCS' right to collect the debt, or that demonstrate that DCS acted with knowledge of its misconduct.

D. Maryland Consumer Protection Act

Finally, Harkins alleges that DCS engaged in unfair or deceptive trade practices in violation of the MCPA.

"A person may not engage in any unfair or deceptive trade practice . . . in . . . the collection of consumer debts." MD. CODE ANN., COM. LAW § 13-303(5) (2012). These

deceptive and unfair trade practices include a "false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." § 13-301(1). In addition, a merchant cannot promote "a sponsorship, approval, status, affiliation, or connection which he does not have." § 13-301(2)(ii). An entity cannot withhold "a material fact if the failure deceives or tends to deceive." § 13-301(3). A consumer, however, need not actually be "misled, deceived, or damaged as a result of [a practice prohibited in this title]" in order to constitute a violation of the title. § 13-302.

Harkins has not pled facts that plausibly establish DCS' purported misconduct. He must at least sketch out why and how DCS used misleading written statements to collect on a debt, citing, perhaps, excerpts from his communications with the company which demonstrate a lack of veracity of DCS' documents with respect to his own financial statements. Though Harkins need not actually prove his damages resulting from DCS' deception at this juncture, he must at least set forth information as to how DCS misled him or used deceptive tactics in collecting the debt as well as demonstrate that a consumer could be misled by the statements and actions of DCS.

## IV.

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** DCS' Motion for Judgment on the Pleadings (Paper No. 10) and **GRANTS** Harkins' request for leave to amend his Complaint (Paper No. 13), which must be accomplished within the next thirty (30) days. Harkins' Motion to Extend Discovery (Paper No. 16) is deemed **MOOT**.

A separate Order will **ISSUE**.

                                         /s/
                               **PETER J. MESSITTE**
                         **UNITED STATES DISTRICT JUDGE**

**November 20, 2012**